Toni CASTIGLIONE, and The Estate of Joseph Castiglione, Plaintiffs,

v.

THE UNITED STATES LIFE INSURANCE COMPANY IN THE CITY OF NEW YORK, a New York corporation; Groen Brothers Aviation, Inc., a Utah corporation; Sego Tool Inc., a Utah corporation; ServCom Staff Management, Inc., a Utah corporation; SOS Staffing Services, Inc., a Utah corporation; Ascend HR Solutions, Inc., a Utah corporation Defendants.

No. CV–02–0662–PHX–JAT.

United States District Court, D. Arizona.

April 29, 2003.

Steven A. Cohen, Geoffrey M. Trachtenberg, Levenbaum & Cohen, Phoenix, for Toni Castiglione, a widow, pla.

Robert Clifford Hackett, Daniel P. Beeks, Matthew J. Kelly, Mohr Hackett Pederson Blakley & Randolph PC, Phoenix, AZ, Suzanne M Dallimore, Nancy M Bonnell, Dallimore & Bonnell LLP, Phoenix, AZ, Edward G Hochuli, Suzanne Renea Cobb, Jones Skelton & Hochuli PLC, Phoenix, AZ, for United States Life Insurance Company in the City of New York, a New York corporation, American General Finance, a Delaware corporation, Groen Brothers Aviation, Inc., a Utah corporation, Sego Tool Inc, a Utah corporation, Servcom Staff Management, Inc., a Utah corporation, John Does, I–V, Jane Does, I–V, Black Partnerships, I–V, White Corporations, I–V, SOS Staffing Service, a Utah corporation, Ascend HR Solutions, Inc, a Utah corporation, dfts.

## ORDER

TEILBORG, District Judge.

Pending before the Court are Defendant United States Life Insurance Company's ("USLife") Motion for Partial Summary Judgment (Doc. # 47)[1] and Motion to Strike Plaintiffs' Statement of Facts (Doc. # 63). Toni Castiglione and the Estate of Joseph Castiglione ("Plaintiffs") have filed an Opposition to USLife's Motion for Partial Summary Judgment (Doc. # 58) and an Opposition to USLife's Motion to Strike (Doc. # 65). Defendants USLife and ServCom have filed Replies to Plaintiffs' Opposition for Partial Summary Judgment (Docs. # 61 and # 64)[2] and USLife has filed a Reply to Plaintiffs' Opposition to USLife's Motion to Strike. (Doc. # 71). For the reasons set forth below, the Court will grant USLife's Motion for Partial Summary Judgment as to USLife and Groen only, but will deny such motion as to ServCom. The Court will also deny USLife's Motion to Strike as moot.

### Background

The case before the Court arises in the context of an insurance dispute involving several parties. On May 10, 2000, Joseph Castiglione ("Joseph") applied with Groen for a job he learned about in the Arizona Republic. (Doc. # 59 at 1–2). Previously, Groen had entered an employee leasing contract with ServCom, wherein ServCom agreed to ensure Groen's adherence to federal, state, and local tax laws, payroll, workers' compensation laws, and to provide group health and life insurance. (Docs. # 48 at 2; # 59 at 2 and; # 62 at 2). In order to qualify for the benefits, Joseph signed a written employment agreement ("Employment Agreement") that permitted ServCom to "lease" him to third parties, such as Groen. (Docs. # 48 at 2 and # 62 at 2).[3] Pursuant to the contract with Groen, ServCom purchased a

---

1. Through joint counsel, Defendants Groen Brothers Aviation, Inc. and Sego Tool, Inc. (hereinafter "Groen") joined USLife's Motion for Partial Summary Judgment. (Doc. # 53). Additionally, ServCom Staff Management Inc., SOS Staffing Services, Inc., and Ascend HR Solutions, Inc. (hereinafter "ServCom"), through joint counsel, also joined USLife's Motion for Partial Summary Judgment. (Doc. # 56).

2. Defendant Groen joined USLife and ServCom's Replies. (Doc. # 67).

3. The Employment Agreement was an "at will" agreement that allowed either party to terminate the relationship "at any time with-

USLife basic term life and accidental death and dismemberment policy ("Basic Policy") for Joseph. On May 15, 2000, Joseph also chose to apply for the voluntary term life insurance and accidental death and dismemberment policy ("Supplemental Policy"), in which he sought $100,000 in supplemental benefits from USLife under ServCom's group policy number. (Docs. # 48 at 2 and # 59 at 2). USLife processed the Supplemental Policy application and notified Joseph on July 15, 2000, that the application was approved and that the policy would take effect on August 1, 2000. *Id.* at 3. Joseph died on July 31, 2000. *Id.*

Toni Castiglione, Joseph's widow, submitted a claim to USLife for the $100,000 benefit under the Supplemental Policy. (Doc. # 48 at 4).[4] USLife denied the claim because the Supplemental Policy was not effective at the time of Joseph's death. *Id.* Consequently, Plaintiffs brought this action alleging negligence, breach of contract, and breach of fiduciary duty. (Compl. at 8–10). They are seeking compensatory and punitive damages. (*Id.* at 11). USLife filed the Motion for Partial Summary Judgment currently before the Court, arguing that the Employment Retirement Income Security Act of 1974 ("ERISA") preempts some of Plaintiffs' claims. (Doc. # 47).

### Discussion

### I. STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any materi-

al fact and that the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, summary judgment is mandated, "... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247–48, 106 S.Ct. 2505.

### II. ERISA PREEMPTION

█ The issue for purposes of the Motion for Partial Summary Judgment is

---

out prior notice." (Docs. # 48 at 2 and # 62 at Ex. A). The Employment Agreement also stated that "ServCom will be responsible for payroll, withholding and timely payment of all applicable employer and employee statutory taxes and insurance." (Doc. # 62 at Ex. A). Furthermore, in the Employment Agree-

ment, Joseph agreed to notify ServCom of "any on-the-job occurrence, accident, or injury" and to "submit to a drug and alcohol test." *Id.*

4. The benefits associated with the Basic Plan are not at issue in this case.

whether ERISA applies to the parties' insurance dispute. If ERISA applies, it would preempt Plaintiffs' common law claims. *See* 29 U.S.C. § 1144(a) ("[ERISA] supercede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described [within the code]."). Upon a motion for summary judgment, the existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding circumstances from the point of view of a reasonable person. *Kanne v. Conn. General Life Ins. Co.*, 867 F.2d 489, 492 (9th Cir.1988).

ERISA applies to "any employee benefit plan if it is established or maintained by any employer engaged in commerce or in any industry or activity affecting commerce." 29 U.S.C. § 1003(a)(1).[5] An ERISA "employee welfare benefit plan" is:
> (1) a plan, fund or program; (2) established or maintained; (3) by an employer or by an employee organization, or by both; (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, [and] death ... benefits (5) to participants or their beneficiaries.

*Moideen v. Gillespie*, 55 F.3d 1478, 1481 (9th Cir.1995) (citing *Kanne*, 867 F.2d at 492); *see also* 29 U.S.C. § 1002(1).

▆ The Court finds that the Supplemental Policy provided by ServCom constitutes a "plan" under 29 U.S.C. 1002(1). Moreover, it is clear that the Supplemental Policy offers benefits under the statute for an employee welfare benefit plan because it offers coverage for accidental death and dismemberment. Thus, the question of whether the Supplemental Policy is an ERISA plan under the statutory definition turns on whether it was "established or maintained" by an "employer."

## III. PARTIES' ARGUMENTS

### A. Did ServCom "Establish or Maintain" an Employee Welfare Benefit Plan?

#### 1. Plaintiffs' argument

Plaintiffs contend that Defendants' Motion for Partial Summary Judgment cannot be granted because ServCom admitted in its Requests for Admissions that it "did not 'establish or maintain' the 'Group Term Life and Accidental Death & Dismemberment' plan offered to persons, such as Joseph Castiglione." (Docs. # 58 at 4 and # 60 at Ex. A (No. 58)). Groen also admitted that it did not "establish or maintain" a plan. (Docs. # 58 at 4 and # 60 Ex. (No. 46)).[6] Thus, Plaintiffs submit that Defendants should be barred from arguing that ServCom and Groen established or maintained an employee welfare benefit plan. (Doc. # 58 at 4–5). Plaintiffs support their argument by citing the Advisory Committee Note to the 1970 amendments of Federal Rule of Civil Procedure 36(b), which states, "[t]he new provisions give an admission a conclusively binding effect, ... unless the admission is withdrawn or amended." *Id.*

#### 2. USLife's argument

USLife contends that "[P]laintiffs fail to recognize that, in general, the interpretation of ERISA presents questions of law, *Everhart v. Allmerica Fin. Life Ins. Co.*, 275 F.3d 751, 753 (9th Cir.2001), and whether a plan has been established or

---

**5.** ERISA defines the term "employee benefit plan" as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." 29 U.S.C. § 1002(3). It is undisputed that if an employee benefit plan exists at all in this case, it would be an employee welfare benefit plan. (Docs. # 47 at 6 and # 58 at 13).

**6.** Groen did not take a position on whether ServCom established or maintained a plan.

maintained by an employer for purposes of ERISA is a mixed question of law and fact for *the court's* determination. *New England Mut. Life Ins. Co., Inc. v. Baig*, 166 F.3d 1, 3 (1st Cir.1999)." (Doc. # 64 at 2). Therefore, it submits that ServCom and Groen's admissions that they did not establish or maintain the ERISA plan at issue are inconsequential. *Id.* Moreover, USLife argues that the surrounding facts suggest that ServCom did "establish and maintain" an ERISA plan. (Docs. # 47 at 5–6 and # 64 at 2). In support, it quotes *Carver v. Westinghouse Hanford Co.*, 951 F.2d 1083, 1086 (9th Cir.1991) (quoting *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir.1982) (en banc)), which stated that an ERISA plan may be "established or maintained" by an employer "even without a formal intentional plan adoption if 'from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits.'" (Doc. # 64 at 2). USLife asserts that ServCom met *Donovan's* four-prong test as follows:

> The purchase or offering of term life and AD & D insurance, whether basic or supplemental, is the intended benefit. The term life and AD & D coverage was provided and offered to ServCom's employees—the "class of beneficiaries." ServCom paid for the basic term life and AD & D insurance and the employees paid for the supplemental term life and AD & D insurance. This demonstrates the "source of financing." ServCom "acted as an intermediate for gathering the appropriate documents for filing a claim," and the policies defined the manner in which claims were to be submitted—i.e., the procedures for receiving benefits.

(Doc. # 47 at 6). In any event, USLife argues that "[a]dmissions made by Serv-Com and Groen ... are not binding on USLife." (Doc. # 64 at 1).

3. Analysis

 The Court finds the Advisory Committee Note cited by Plaintiffs highly persuasive. Moreover, the Fifth Circuit has held that "[a]n admission that is not withdrawn or amended cannot be rebutted by contrary testimony or ignored by the district court simply because it finds the evidence presented by the party against whom the admission operates more credible." *Am. Auto. Assoc. v. AAA Legal Clinic* 930 F.2d 1117, 1120 (5th Cir.1991); *see also Airco Indus. Gases v. Teamsters Welfare Pension Fund* 850 F.2d 1028, 1036 (3d Cir.1988) (noting that an admission of fact is "not merely another layer of evidence, upon which the district court can superimpose its own assessment of weight and validity"). Therefore, the Court will not consider any evidence offered by Serv-Com suggesting that it established or maintained an employee welfare benefit plan. However, the Court agrees with USLife that codefendants are not bound by another defendant's admission. (Doc. # 64 at 1); *Riberglass, Inc. v. Techni–Glass Industs., Inc.*, 811 F.2d 565, 567 (11th Cir.1987) (holding that district court erred in saddling defendant with codefendants' admissions). USLife makes a well-reasoned argument for the application of *Donovan* to the facts of this case. Moreover, Plaintiffs fail to contest the argument. Therefore, for purposes of USLife and Groen, the Court finds that ServCom established or maintained an employee welfare benefit plan.

## B. Is ServCom Joseph's "Employer" for ERISA Purposes?

The next issue to resolve is whether ServCom is Joseph's "employer" for ERISA purposes. ERISA defines "employer" as "any person acting directly as an employer or indirectly in the interests of an employer, in relation to an employee benefit plan." 29 U.S.C. § 1002(5).

### 1. Plaintiffs' arguments

█ Plaintiffs argue that "ServCom did not act directly as an employer in relation to the benefits plan because no employment or economic relationship existed between ServCom and the employees of the subscribing employers—such as Groen." (Doc. # 58 at 6). To support their argument, Plaintiffs cite to *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 319, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992), which construed "employee" as it appeared in ERISA and read it "to incorporate traditional agency law criteria for identifying master-servant relationships." Here, Plaintiffs argue that under the common law principles of agency, ServCom was not Joseph's employer because ServCom admitted that it did not control Joseph's day-to-day activities. (Doc. # 58 at 8) (citing *Darden,* 503 U.S. at 323–24, 112 S.Ct. 1344) ("In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished.").[7]

### 2. Defendants' arguments

Defendants counter arguing that ServCom was Joseph's direct employer in relation to the employee benefit plan at issue for the following reasons: (1) Joseph signed an Employment Agreement with ServCom acknowledging that he was an "at-will" employee; (2) Joseph completed a Department of Justice I–9 form, which listed ServCom as Joseph's employer; (3) ServCom paid Joseph's salary; (4) ServCom withheld and/or paid Joseph's taxes, including the employer's portion of FICA; (5) ServCom paid workers' compensation premiums for Joseph; (6) ServCom paid Joseph's basic term life and accidental death and dismemberment premium and offered him other insurance benefits; (7) Joseph agreed to report all occurrences, accidents, and injuries to ServCom; and (8) Joseph agreed to submit to ServCom for drug testing. (Docs. # 47 at 9 and # 61 at 2). Moreover, Defendants argue that contrary to Plaintiffs' contention, "[t]he statutory definition of 'employer' sweeps more broadly than its common-law counterpart." (Doc. # 64 at 4) (citing *Kwatcher v. Mass. Serv. Emps. Pension Fund,* 879 F.2d 957, 960 (1st Cir.1989)) ("That ERISA expands the concept of 'employer' beyond common-law or corporate-law notions is not much in doubt.").[8]

### 3. Analysis

█ The Court agrees with Defendants and finds it unnecessary to delve

---

**7.** The factors relevant to determining whether the hiring party has the right to control include:
the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party. *Darden,* 503 U.S. at 323–24, 112 S.Ct. 1344.

**8.** Plaintiffs note that the case *Kwatcher* relies on for this proposition was *Darden v. Nationwide Mut. Ins. Co.,* 796 F.2d 701, 706 (4th Cir.1986), which was eventually overruled by the Supreme Court in *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 323–24, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992). (Doc. # 58 at 6 n. 3). Nonetheless, Defendants correctly point out that the Supreme Court's holding in *"Darden* only considered ERISA's definition of an 'employee,' rather than the definition of an 'employer.'" (Doc. # 64 at 5 n. 5) (citing *Darden,* 503 U.S. at 319, 112 S.Ct. 1344).

into the common law principles of agency. ERISA preemption is "conspicuous for its breadth." *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 137, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). Plaintiffs' proposal to apply common law principles, however, asks the Court to apply a narrow definition inconsistent with the statutory language. The statute merely requires ServCom to act "directly as an employer or indirectly in the interests of an employer, *in relation to an employee benefit plan.*" 29 U.S.C. § 1002(5) (emphasis added). For purposes of the benefits at issue, ServCom was Joseph's employer. It is clear that Joseph would not have been entitled to the benefits plan had he not been employed by ServCom. Thus, the Court finds that ServCom was Joseph's direct employer in relation to the employee benefits plan. Alternatively, the Court also finds that even if ServCom was not Joseph's direct employer, it acted indirectly in the interest of Groen by offering benefits to Groen employees. By providing benefits to Groen's employees, benefits in which ServCom had no pecuniary interest, ServCom was acting in the interests of Groen in relation to the plan.[9]

## C. Even if the Plan at Issue Is an Employer Welfare Benefit Plan, Does It Fall Within the ERISA Safe Harbor?

■ Plaintiffs argue that even if the Court finds that the plan at issue is an employee welfare benefit plan, it still falls within the ERISA "safe harbor" provisions of 29 C.F.R. § 2510.3–1(j). The regulation states that:

the term[ ] employee welfare benefit plan . . . shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which

(1) No contributions are made by an employer;

(2) Participation in the program is completely voluntary for employees;

(3) The sole function of the employer with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees, to collect premiums through payroll deductions and to remit them to the insurer; and

(4) The employer receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions.

29 C.F.R. § 2510.3.1(j); *Stuart v. UNUM Life Ins. Co. of Am.*, 217 F.3d 1145, 1153 (9th Cir.2000) ("[A]n otherwise qualified group insurance plan must satisfy all four requirements of the safe harbor provision to be excluded from ERISA.").

---

**9.** *MDPhysicians & Assoc. v. Texas Bd. of Ins.*, 957 F.2d 178 (5th Cir.1992), the case on which Plaintiffs' rely, is easily distinguishable from the instant case. In *MDPhysicians*, the court determined that the for profit benefit entity ("MDP") was not acting indirectly in the interests of its subscribing employers because "[o]utside the provision of medical and health benefits under the MDP Plan, MDP had no relationship with the Employees of Subscribing Employers." *MDPhysicians*, 957 F.2d at 186. The court explained "that the entity that maintains the plan and the individ-

uals that benefit from the plan [must be] tied by a common economic or representation interest, unrelated to the provision of benefits." *Id.* at 186. (quoting *Wis. Educ. Ass'n Ins. Trust v. Iowa State Bd.*, 804 F.2d 1059, 1063 (8th Cir.1986)). Here, ServCom did have a direct economic relationship to Joseph that was unrelated to the provision of benefits. ServCom had an agreement that established the parameters of its working relationship with Joseph, and ServCom paid Joseph's salary, taxes, and workers' compensation and other insurance premiums. (Doc. # 47 at 10).

Plaintiffs argue that the Supplemental Policy meets all the requirements and should be excluded from ERISA. (Doc. # 58 at 15). Defendants concede that the Supplemental Policy meets the requirements, but assert that the Supplemental Policy cannot be looked at apart from the plan as a whole. (Doc. # 47 at 7) (citing *Peterson v. Am. Life & Health Ins. Co.*, 48 F.3d 404, 407–08 (9th Cir.1995)). In a similar case, the Eleventh Circuit held that a voluntary supplemental policy

> may not be severed from the plan in order to [come within the 'safe harbor' provisions of 29 C.F.R. § 2510.3–1(j) and] defeat ERISA coverage. [The voluntary supplemental] coverage was provided at discount rates only to participants of the Basic plan. [The voluntary supplemental] feature is part and parcel of the whole group insurance plan and thus ERISA governs it.

*Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341, 1345 (11th Cir.1994). Like *Glass*, the Supplemental Policy in this case is "part and parcel" of the Basic Policy. Further, when considering the entire policy, including both the Basic and Supplemental Policies, the policy as a whole does not fall within the safe harbor provision. It is undisputed that the Basic Policy was not voluntary and that ServCom paid the premiums. (Doc. # 60 Ex. A (Nos. 40 and 42)). Therefore, the entire policy, including the Supplemental Policy, is governed by ERISA.

### Conclusion

The Court finds that, for purposes of USLife and Groen, ServCom was an ERISA employer that established or maintained an employee welfare benefit plan. Therefore, Plaintiffs' common law claims are preempted as to them. However, because ServCom admitted that it did not establish or maintain an employee welfare benefit plan, the Court cannot find that it established or maintained a plan. Thus, Plaintiffs' common law claims may proceed against ServCom. Accordingly,

**IT IS ORDERED** that Defendant US-Life's Motion for Partial Summary Judgment is **GRANTED** with respect to US-Life and Groen. (Doc. # 47). However, the Motion for Partial Summary Judgment is **DENIED** as to Defendant ServCom.

**IT IS FURTHER ORDERED** that Defendant USLife's Motion to Strike Plaintiffs' Statement of Facts is **DENIED** as moot. (Doc. # 63).